UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__8/6/2018___

-----------------------------------------------------------  X
                :
IN RE LYMAN GOOD DIETARY       :      17-CV-8047 (VEC)
SUPPLEMENTS LITIGATION        :
                :      OPINION AND ORDER
-----------------------------------------------------------  X

VALERIE CAPRONI, United States District Judge:

      Plaintiff Lyman Good brings this action against two manufacturers of dietary supplements, individual officers of the manufacturers, and a retailer. Plaintiff, a mixed-martial arts ("MMA") fighter, claims that Defendants sold him dietary supplements containing illicit anabolic steroids and thereby caused him to be suspended from the Ultimate Fighting Championship ("UFC"), a professional MMA league. Plaintiff brings numerous contract and tort claims, including breach of warranty, fraud, false advertising, intentional infliction of emotional distress, and products liability. Most Defendants have moved to dismiss at least some of Plaintiff's claims. Plaintiff moves for leave to amend in response to one of these motions. For the reasons that follow, Defendants' motions are GRANTED IN PART AND DENIED IN PART. Additionally, Plaintiff's motion for leave to amend is GRANTED IN PART AND DENIED IN PART.

# BACKGROUND[1]

## I.      Plaintiff's Allegations

Plaintiff is a professional MMA fighter who has competed in the UFC since July 2015.

Mill. Am. Compl. ¶ 9; Gaspari Am. Compl. ¶ 15.[2]   While under contract with UFC, Plaintiff

consumed two dietary supplements, Anavite and Cordygen-VO2 ULTRA.   Mill. Am. Compl.

¶ 58; Gaspari Am. Compl. ¶ 69.   Anavite is manufactured by Defendants Gaspari Nutrition, Inc.

("Gaspari Nutrition") and Hi-Tech Pharmaceuticals, Inc. ("HTP").   Gaspari Am. Compl. ¶¶ 17,

24.[3]   Cordygen-VO2 ULTRA is manufactured by Defendant Millennium Sport Technologies,

Inc. ("Millennium").   Mill. Am. Compl. ¶ 10.   Both products are sold by numerous retailers,

including Defendant Vitamin Shoppe, Inc. ("Vitamin Shoppe").   Gaspari Am. Compl. ¶¶ 11, 25.

On October 14, 2016, Plaintiff was drug-tested by UFC's Anti-Doping Program.   Mill.

Am. Compl. ¶¶ 56–57; Gaspari Am. Compl. ¶¶ 67–68.   Plaintiff tested positive for 1-

androstenedione ("andro").   Mill. Am. Compl. ¶¶ 56–57; Gaspari Am. Compl. ¶¶ 67–68.   Andro

is an anabolic-androgenic steroid, that is, a substance that stimulates male secondary sex

characteristics, including muscle growth.   Mill. Am. Compl. ¶¶ 17–18; Gaspari Am. Compl.

¶¶ 26–27.   The use of andro is banned by the UFC, the World Anti-Doping Agency ("WADA"),

and the United States Anti-Doping Agency ("USADA").   Mill. Am. Compl. ¶¶ 50–53; Gaspari

---

[1]      On this motion to dismiss, the Court accepts all factual allegations in the pleadings as true and draws all reasonable inferences in the light most favorable to the Plaintiff.   *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013).

[2]      Because this case has been consolidated, Plaintiff's allegations are set forth in two different Complaints. The allegations against Gaspari Nutrition, Inc., Richard Gaspari, Hi-Tech Pharmaceuticals, Inc., Jared R. Wheat, and Vitamin Shoppe, Inc. are set forth in an Amended Complaint at Dkt. 38, which the Court will refer to as the "Gaspari Amended Complaint" or "Gaspari Am. Compl."   The allegations against Millennium Sport Technologies, Inc. and Matthew Masuda are set forth in an Amended Complaint at Dkt. 21, which the Court will refer to as the "Millennium Amended Complaint or "Mill. Am. Compl."

[3]      Gaspari Nutrition uses HTP's manufacturing and warehouse facilities to produce and store Anavite. *See* Gaspari Am. Compl. ¶¶ 17, 24.

Am. Compl. ¶¶ 60–63.  Andro is also classified as a Schedule III controlled substance under the Controlled Substances Act ("CSA").  Mill. Am. Compl. ¶ 34 (citing 21 U.S.C. § 802(41)(A)(iv)(I)); Gaspari Am. Compl. ¶ 44 (same).  Accordingly, after Plaintiff tested positive for andro, UFC suspended him for violation of its anti-doping rules.  Mill. Am. Compl. ¶ 8; Gaspari Am. Compl. ¶¶ 9, 16.

Plaintiff's suspension prompted him to submit unopened bottles of Anavite and Cordygen-VO2 ULTRA to a third-party laboratory for testing.  Mill. Am. Compl. ¶¶ 58–59; Gaspari Am. Compl. ¶ 70.  The lab detected andro in both products.  Mill. Am. Compl. ¶ 61; Gaspari Am. Compl. ¶ 72.

Plaintiff claims that the presence of andro in Anavite and Cordygen-VO2 ULTRA makes their labeling as "dietary supplements" false and misleading.  According to Plaintiff, the Federal Food, Drug, and Cosmetic Act ("FDCA") prohibits dietary supplements from containing drugs such as andro.  Mill. Am. Compl. ¶¶ 46–47; Gaspari Am. Compl. ¶¶ 56–57.  Thus, in Plaintiff's view, labeling a product as a "dietary supplement" is a representation that the product is drug-free.  Mill. Am. Compl. ¶¶ 79–80; Gaspari Am. Compl. ¶¶ 107–108.[4]

Plaintiff also alleges that Defendants made several other misrepresentations about their products.  Gaspari Nutrition and HTP represent to the public that their products are "safe," fit for any "category bodybuilder, [mixed-martial arts] athlete, or weekend warrior," and that "you're getting what's on the label."  Gaspari Am. Compl. ¶ 3.  Similarly, Millennium represents that its products are "formulated and manufactured without the use of any banned substances."  Mill. Am. Compl. ¶ 3.  Cordygen-VO2 ULTRA's label states that the product is "banned substance

---

[4]     Plaintiff also alleges that Anavite and Cordygen-VO2 ULTRA are "adulterated" and/or "misbranded" under the FDCA.  Mill. Am. Compl. ¶¶ 63–74; Gaspari Am. Compl. ¶¶ 74–87.  These allegations are not material to Defendants' motions, so the Court need not discuss them.

free."  *Id.* ¶ 64.  Vitamin Shoppe, for its part, represented in a public filing that it follows "strict quality-assurance procedures."  Gaspari Am. Compl. ¶¶ 11, 100.  It also allegedly holds itself out as a "a source of specialized knowledge on dietary supplements," and it represents to consumers "that it should be trusted" and that its products are "safe and effective."  *Id.* ¶¶ 11, 99–102.  In Plaintiff's view, all of these representations are false because Defendants' products contain andro.

## II.    Procedural History

On October 19, 2017, Plaintiff filed a complaint against Millennium and Matthew Masuda, Millennium's President and CEO.  *See* Mill. Compl., Dkt. 1.  On the same date, Plaintiff filed a nearly identical complaint in New York State Supreme Court against Vitamin Shoppe, Gaspari Nutrition, HTP, Richard Gaspari, and Jared Wheat.  *See* Notice of Removal, No. 17-cv-8682, Dkt. 1.  Gaspari and Wheat are officers of Gaspari Nutrition and HTP, respectively.  See Gaspari Am. Compl. ¶¶ 18, 21.  The state case was removed on November 8, 2017.  *See* Notice of Removal.  This Court consolidated the two cases on December 18, 2017, *see* Order, Dkt. 19, and Plaintiff filed amended complaints on January 9, 2018.

Plaintiff sues all Defendants for breach of express warranty (First Cause of Action); breach of implied warranty of merchantability (Second Cause of Action); breach of implied warranty of fitness for a particular purpose (Third Cause of Action); deceptive acts or practices under New York General Business Law § 349 (Fifth Cause of Action); false advertising under New York General Business Law § 350 (Sixth Cause of Action); products liability under a negligence theory (Tenth Cause of Action); and general negligence (Eleventh Cause of Action).

Plaintiff sues all Defendants except Vitamin Shoppe for fraud (Fourth Cause of Action); assault and battery (Seventh Cause of Action); reckless or intentional infliction of emotional distress (Eighth Cause of Action); and products liability under a strict liability theory (Ninth

Cause of Action);. *See* Mill. Am. Compl. ¶¶ 75–166; Gaspari Am. Compl. ¶¶ 103–194; Pl.'s Mem. of Law, Dkt. 39, at 7 n.1.[5]

### III.    The Pending Motions

Gaspari Nutrition, HTP, Richard Gaspari, and Jared Wheat (the "Gaspari Defendants") move to dismiss Plaintiff's claims for fraud, assault and battery, and reckless or intentional infliction of emotional distress.  *See* Gaspari Notice of Mot., Dkt. 30; Gaspari Mem. of Law, Dkt. 31, at 9–14.[6]

Richard Gaspari, Jared Wheat, and Matthew Masuda (the "Individual Defendants") move to dismiss all claims for failure to state a claim and for lack of personal jurisdiction.  *See* Gaspari Mem. of Law at 4–9, 14–15; Masuda Notice of Mot., Dkt. 22; Masuda Mem. of Law, Dkt. 22, Ex. 2.

The Gaspari Defendants also move to limit the damages Plaintiff can recover for negligent products liability and for general negligence based on New York's economic loss rule. *See* Gaspari Mem. of Law at 15.  Vitamin Shoppe moves to dismiss all of Plaintiff's "tort causes of action" entirely based on the economic loss rule.  Vitamin Shoppe Mem. of Law at 11–12.[7]

Finally, Vitamin Shoppe moves to dismiss Plaintiff's claims for breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and false advertising.  *See* Vitamin Shoppe Mem. of Law, Dkt. 36.

---

[5]    Although Plaintiff's allegations are set forth in two different Amended Complaints, the pleadings allege the same causes of action in the same numerical order.

[6]    Vitamin Shoppe joined in the motion to dismiss Plaintiff's claim for reckless or intentional infliction of emotional distress, *see* Vitamin Shoppe Mem. of Law, Dkt. 36, at 12, but Plaintiff stated in his response that he had not sued Vitamin Shoppe for reckless or intentional infliction of emotional distress, *see* Pl.'s Mem. of Law at 7 n.1.

[7]    Millennium answered the Amended Complaint.  *See* Millennium Answer, Dkt. 23.

In response to Vitamin Shoppe's motion to dismiss, Plaintiff moves for leave to amend the Gaspari Amended Complaint.  *See* Pl. Mem. of Law at 7–12; *id.* Ex. B.

## DISCUSSION

### I.      Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief."  *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level."  *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted).

### II.     The Court Grants the Gaspari Defendants' Motion to Dismiss Plaintiff's Claims for Fraud, Assault and Battery, and Reckless or Intentional Infliction of Emotional Distress

The Gaspari Defendants move to dismiss Plaintiff's claims for common-law fraud, assault and battery, and reckless or intentional infliction of emotional distress.  The Gaspari Defendants' motion is granted.

### A.      Plaintiff's Claim for Fraud

"Under New York law, fraud requires proof of (1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages."  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 170 (2d Cir. 2015) (citing *Eurycleia Partners, LP v.*

*Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009)). Fraud claims are subject to the heightened

pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *See Tellabs, Inc. v.

Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 (2007). Although scienter under Rule 9(b) "may

be pleaded 'generally,' [p]laintiffs must nonetheless allege facts 'that give rise to a strong

inference of fraudulent intent.'" *Loreley*, 797 F.3d at 171 (quoting *Lerner v. Fleet Bank, N.A.*,

459 F.3d 273, 290-91 (2d Cir. 2006)). "An inference is 'strong' if it is 'cogent and at least as

compelling as any opposing inference one could draw from the facts alleged.'" *Id.* at 176-77

(quoting *Tellabs*, 551 U.S. at 324). "The requisite 'strong inference' of fraud may be established

either (a) by alleging facts to show that defendants had both motive and opportunity to commit

fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious

misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.

1994). "[G]eneralized" motives, such as the desire to earn profits, which "could be imputed to

any publicly-owned, for-profit endeavor," are "not sufficiently concrete for purposes of inferring

scienter." *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996) (ruling that the defendant's

interest in making an investment appear profitable was insufficient to establish motive under

Rule 9(b)).

　　Here, Plaintiff offers conclusory allegations that "[t]he goal of Defendants' conduct is to

deceive consumers . . . so that consumers continue to buying [sic] the product and generate

revenue for Defendants." Gaspari Am. Compl. ¶ 6; *see also id.* ¶ 1 ("The purpose was and is to

intentionally deceive consumers into believing that Gaspari Nutrition manufactured superior

'dietary supplements.'"); *id.* ¶ 10 ("Defendants initiated and have continued this fraudulent

scheme . . . as they appear to believe that this scheme is still profitable."). These allegations

relate only to the Gaspari Defendants' generalized motives to earn profits and, therefore, are

insufficient to state a claim for fraud. *See, e.g.*, *Chill*, 101 F.3d at 268; *Stephenson v. Citco Grp. Ltd.*, 700 F. Supp. 2d 599, 620-21 (S.D.N.Y. 2010) ("[T]he mere receipt of compensation and the maintenance of a profitable professional business relationship . . . does not constitute a sufficient motive for purposes of pleading scienter."); *Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*, 551 F. Supp. 2d 210, 227 (S.D.N.Y. 2008) ("To accept a generalized allegation of motive based on a desire to continue to obtain management fees would read the scienter requirement out of the statute."). The balance of Plaintiff's allegations are threadbare, conclusory assertions that the Gaspari Defendants "knew of the falsity, or recklessly disregarded the truth, of those representations." Gaspari Am. Compl. ¶ 132; *see also id.* ¶¶ 131, 134. These allegations are, of course, insufficient to raise a strong inference of fraudulent intent.

For all these reasons, the Court grants the Gaspari Defendants' motion to dismiss Plaintiff's fraud claim.

**B.      Plaintiff's Claim for Assault and Battery**

Plaintiff's Seventh Cause of Action is styled as a claim for "assault and battery." Gaspari Am. Compl. ¶¶ 163–166. Under New York law, assault and battery are distinct torts with different elements. *See Wright v. Musanti*, No. 14-CV-8976, 2017 WL 253486, at *14 (S.D.N.Y. Jan. 20, 2017), *aff'd*, 887 F.3d 577 (2d Cir. 2018).

Assault is the "intentional placing of another person in fear of imminent or offensive contact." *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001). This tort requires a plaintiff to show that "the defendant intended 'either to inflict personal injury or to arouse apprehension of harmful or offensive bodily contact.'" *Bouveng v. NYG Capital LLC*, No. 14-CV-5474, 2015 WL 3503947, at *9 (S.D.N.Y. June 2, 2015) (quoting *Wahlstrom v. Metro-N. Commuter R. Co.*, 89 F. Supp. 2d 506, 528 (S.D.N.Y. 2000)).

Battery is "an intentional wrongful physical contact with another person without consent." *Green v. City of New York*, 465 F.3d 65, 86 (2d Cir. 2006). To state this claim, a plaintiff must allege "that there was bodily contact, that the contact was offensive, and that the defendant intended to make the contact without the plaintiff's consent." *Bastein v. Sotto*, 299 A.D.2d 432, 433 (2d Dep't 2002). "The intent required for battery is intent to cause a bodily contact that a reasonable person would find offensive." *Jeffreys v. Griffin*, 1 N.Y.3d 34, 41 n.2 (2003).

Here, Plaintiff offers only one threadbare allegation as to the intent necessary for either assault or battery: that the Gaspari Defendants "intended to inflict personal injury on Plaintiff without his consent." Gaspari Am. Compl. ¶ 164. This allegation is conclusory and fails to state a plausible claim for relief. Plaintiff also argues in his response brief that "putting a substance into a person without their consent is battery." Pl. Mem. of Law, Dkt. 39, at 4. But Plaintiff cites no cases for this proposition and, even if true, Plaintiff still would not have properly alleged the intent required for battery.[8]

For all these reasons, the Court grants the Gaspari Defendants' motion to dismiss Plaintiff's claim for assault and battery.

### C. Plaintiff's Claim for Reckless or Intentional Infliction of Emotional Distress

Under New York law, a claim for reckless or intentional infliction of emotional distress has four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993). The first element requires that the defendant's conduct be "so outrageous in

---

[8] Plaintiff's response brief entirely fails to respond to the Gaspari Defendants' arguments regarding his assault claim; accordingly, Plaintiff has abandoned his assault claim.

character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (quoting *Howell*, 81 N.Y.2d at 122).

Nothing in the Amended Complaint raises a plausible inference that the Gaspari Defendants acted with the intent to cause (or in disregard of a substantial probability of causing) Plaintiff emotional distress. Nor does Plaintiff explain how the Gaspari Defendants' conduct goes "beyond all possible bounds of decency." *Stuto*, 164 F.3d at 827. Indeed, courts have dismissed intentional infliction of emotional distress claims involving considerably more outrageous conduct than that which is alleged in this case. *See id.* at 828 (observing that cases that have sustained such claims usually involve "some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy" (collecting cases)).

Plaintiff argues that, in situations involving "exposure to a toxic or unknown substance," a plaintiff can recover if he shows, without more, (1) exposure to the substance and (2) a rational basis for fear of future injury resulting from that substance. Pl.'s Mem. of Law at 5 (citing *Marchica v. Long Island R.R. Co.*, 31 F.3d 1197, 1204 (2d Cir. 1994); *Prato v. Vigliotta*, 253 A.D.2d 746, 748 (2d Dep't 1998)). Plaintiff is incorrect as a matter of law. The cases on which Plaintiff relies involve claims for *negligent* infliction of emotional distress. *See Marchica*, 31 F.3d at 1204; *Prato*, 253 A.D.2d at 748. Plaintiff, on the other hand, has brought a claim for *reckless or intentional* infliction of emotional distress; that tort requires allegations of intent to cause emotional distress and "extreme and outrageous" conduct, even when the claim involves exposure to a toxic substance. *See, e.g.*, *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 528 F. Supp. 2d 303, 312 (S.D.N.Y. 2007).

For all these reasons, the Court grants the Gaspari Defendants' motion to dismiss Plaintiff's claim for reckless or intentional infliction of emotional distress.

### III. The Motions to Dismiss All Claims Against Richard Gaspari, Jared Wheat, and Matthew Masuda Are Granted

The Individual Defendants (Messrs. Gaspari, Wheat, and Masuda) move to dismiss all claims against them for failure to state a claim under Rule 12(b)(6) or, alternatively, for lack of personal jurisdiction under Rule 12(b)(2). Each of these motions is granted, and all claims dismissed against the Individual Defendants.

#### A. All Claims Against Richard Gaspari, Jared Wheat, and Matthew Masuda Are Dismissed for Failure to State a Claim

##### 1. Legal Standard

The Individual Defendants argue that Plaintiff's allegations arise entirely out of the acts and omissions of Gaspari Nutrition, HTP, and Millennium and, therefore, that Plaintiff has not alleged a basis for holding them liable for the corporations' actions. "Disregard of the corporate form is warranted only in extraordinary circumstances, and conclusory allegations of dominance and control will not suffice to defeat a motion to dismiss." *Societe d'Assurance de l'Est SPRL v. Citigroup Inc.*, No. 10-cv-4754, 2011 WL 4056306, at *5 (S.D.N.Y. Sept. 13, 2011); *see also Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996). "New York law requires the party seeking to pierce a corporate veil to make a two-part showing: (i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997) (citing *Morris v. N.Y. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141 (1993)).

### 2.    Complete Domination

Courts look at several factors to determine whether an individual exercises complete domination over the corporate form, including the absence of corporate formalities, inadequate capitalization of the corporation, and the use of corporate funds for personal purposes. *See N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 224 (2d Cir. 2014); *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991).

Plaintiff alleges that Mr. Gaspari held "overall management responsibilities for all policies and strategies of Gaspari Nutrition" as the company's CEO and sole director.  Gaspari Am. Compl. ¶¶ 18–19; *see also* Pl.'s Mem. of Law at 2 (quoting Mr. Gaspari's LinkedIn page). Similarly, as CEO of HTP, Mr. Wheat "ran HTP all day, every day" and "ordered raw materials, hired staff, mixed the product lines and assured that the manufacturing plant ran on time." Gaspari Am. Compl. ¶ 22; *see also* Pl.'s Mem. of Law at 2 (quoting Mr. Wheat's LinkedIn page). Finally, as president and CEO of Millennium, Mr. Masuda was "the primary actor and decision-maker with respect to the business and manufacturing decisions" of Millennium.  Mill. Am. Compl. ¶ 11.  These facts are inadequate to allege complete domination.  They show that the Individual Defendants were high-level officers with wide-ranging authority over their respective corporations, but an officer or director is not personally liable for the torts of a corporation "merely by reason of his office."  *Phelps Dodge Ref. Corp. v. Fed. Trade Comm'n*, 139 F.2d 393, 397 (2d Cir. 1943); *see also Island Seafood Co. v. Golub Corp.*, 303 A.D.2d 892, 895 (3d Dep't 2003) ("While [Defendant] may be the sole stockholder, director, and officer of both corporations and seems to exhibit disregard of corporate formalities, this, in and of itself, constitutes insufficient proof of complete domination and control which permit a corporate veil

to be pierced."). Nothing in the Amended Complaints suggests that the Individual Defendants disregarded the corporate form or should otherwise be liable for the corporations' actions.[9]

### 3.    Use of Corporate Domination to Commit a Fraud

Under the second prong of New York's veil-piercing test, a plaintiff must allege that an individual used his dominance over the corporate form to commit a fraud or wrong. "[A]bsent bad faith or fraud, corporate officers and directors acting within the scope of their employment cannot be held personally liable for breaches of contract or tortious acts committed by their corporations." *Rella v. N. Atl. Marine, Ltd.*, No. 02-CV-8573, 2004 WL 1418021, at *9 (S.D.N.Y. June 23, 2004) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1177 (2d Cir. 1993); *Amour & Co. v. Celic*, 294 F.2d 432, 439 (2d Cir. 1961)).

As the Court has discussed, Plaintiff has failed to allege that any Defendant—including the Individual Defendants—committed fraud. Plaintiff's conclusory allegations to the contrary are insufficient to pierce the corporate veil. *See E. Hampton Union Free Sch. Dist. v. Sandpebble Builders, Inc.*, 16 N.Y.3d 775, 776 (2011) ("Since, by definition, a corporation acts through its officers and directors, to hold a shareholder/officer . . . personally liable, a plaintiff must do more than merely allege that the individual engaged in improper acts or acted in 'bad faith' while representing the corporation.").[10]

---

[9]        In his response brief, Plaintiff points to a case in the Western District of New York in which Mr. Masuda stated that he operates Millennium as a "sole proprietorship" and that he conducts Millennium's business activities from his home. *See* Pl.'s Mem. of Law at 12 (quoting *Iovate Health Scis., Inc. v. Masuda*, No. 08-CV-809A, 2009 WL 2878526, at *2 (W.D.N.Y. Sept. 2, 2009)). Because Plaintiff failed to allege these facts in the Amended Complaint, the Court need not consider them. *See Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000) ("[A] district court errs when it . . . relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss."). In fact, the Amended Complaint expressly alleges that Millennium is a corporation, not a sole proprietorship. Mill. Am. Compl. ¶ 10. And, in any event, "even the sole owner of a corporation is entitled to the presumption that he is separate from his corporation." *Weinberg v. Mendelow*, 113 A.D.3d 485, 486 (1st Dep't 2014).

[10]        Plaintiff attaches as an exhibit to his response brief a pending indictment against Mr. Wheat, which alleges that Mr. Wheat engaged in a fraudulent scheme to distribute dietary supplements that contained anabolic steroids. *See* Pl.'s Mem. of Law, Ex. A. As discussed, *see supra* n.9, the Court will not consider factual allegations raised for

For all these reasons, Plaintiff has failed to allege a basis for holding the Individual

Defendants liable for the acts of their respective corporations, and all claims against the

Individual Defendants are dismissed with prejudice under Rule 12(b)(6).

**B.  Even if the Claims Against the Individual Defendants Were Legally
Sufficient, the Court Would Lack Personal Jurisdiction Over Them**

**1.  Legal Standard**

A plaintiff "need only make a prima facie showing" of personal jurisdiction to defeat a

motion to dismiss.  *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012).  Additionally,

"a district court sitting in a diversity action . . . may exercise personal jurisdiction to the same

extent as the courts of general jurisdiction of the state in which it sits."  *Bank Brussels Lambert v.

Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002) (citing Fed. R. Civ. P.

4(k)(1)(A)).

None of the Individual Defendants resides in New York.  *See* Mill. Am. Compl. ¶ 11;

Gaspari Am. Compl. ¶¶ 18, 21.  Accordingly, the Court looks to New York's long-arm statute,

N.Y. C.P.L.R. § 302(a), to determine whether it has personal jurisdiction.  It is "well established

that individual officers and employees of a corporation are not automatically subject to personal

jurisdiction . . . simply because a court can exercise jurisdiction over the corporation."  *Pilates,

Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 180–81 (S.D.N.Y. 1995); *see also In re Terrorist

Attacks on Sept. 11, 2001*, 714 F.3d 659, 681 (2d Cir. 2013).  Rather, a corporate officer is subject

---

the first time in a response brief.  *See Friedl*, 210 F.3d at 83–84.  Furthermore, Mr. Wheat's indictment pertains to
entirely different products than the ones at issue here.  The scheme charged in the indictment revolves around
dietary supplements produced directly by HTP (namely, a product called Choledrene), *see* Pl.'s Mem. of Law, Ex. A
¶¶ 21–39, whereas Anavite—the product that Plaintiff purchased—is produced by Gaspari Nutrition (using HTP's
facilities), *see* Gaspari Am. Compl. ¶¶ 17, 24.  Thus, the indictment against Mr. Wheat does not show that
Mr. Wheat used the HTP corporate form to commit the fraud or wrong that allegedly injured Plaintiff, as the law
requires.  *See Am. Fuel Corp.*, 122 F.3d at 134 (a plaintiff must show that an individual's domination over a
corporation "was used to commit a fraud or wrong *that injured the party seeking to pierce the veil*" (emphasis
added)).

to personal jurisdiction only "if it can be shown that the corporation transacted business in New York as the officer's agent." *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 323 (S.D.N.Y. 1998) (citing *Retail Software Svs., Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir. 1988); *see also Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988)).  To satisfy this standard, the plaintiff must allege that the corporation engaged in "purposeful activities" in New York "for the benefit of and with the knowledge and consent of" the corporate officer and that the officer "exercised some control" over the corporation with respect to those activities. *Kreutter*, 71 N.Y.2d at 467.  "At the heart of this inquiry is whether the out-of-state corporate officers were 'primary actor[s] in the transaction in New York' that gave rise to the litigation, and not merely 'some corporate employee[s] . . . who played no part in' it." *Karabu*, 16 F. Supp. 2d at 323 (quoting *Retail Software*, 854 F.2d at 22); *see also Rainbow Apparel Distribution Ctr. Corp. v. Gaze U.S.A., Inc.*, 295 F.R.D. 18, 26 (E.D.N.Y. 2013) (requiring that a corporate officer be "the driving force" behind a corporation's transactions in New York in order to be subject to personal jurisdiction).

### 2.    Plaintiff Fails to Allege Personal Jurisdiction

As the Court has discussed, the two Amended Complaints allege nothing more than that the Individual Defendants had "overall management responsibility" for their respective corporations. *See* Gaspari Am. Compl. ¶¶ 18–19 (Mr. Gaspari held "overall management responsibilities for all policies and strategies of Gaspari Nutrition"); *id.* ¶ 22 (Mr. Wheat "ran HTP all day, every day" and "ordered raw materials, hired staff, mixed the product lines and assured that the manufacturing plant ran on time"); Mill. Am. Compl. ¶ 11 (Mr. Masuda was "the primary actor and decision-maker with respect to the business and manufacturing decisions" of Millennium).  These allegations assert only that the Individual Defendants had general authority over their corporations, not that they were the primary actors in the specific transactions giving rise to this action.  Accordingly, these allegations are insufficient to assert personal jurisdiction.

*See Rainbow Apparel*, 295 F.R.D. at 26 ("The facts must indicate personal involvement on behalf of the corporate officer in the activities giving rise to the suit."); *see also Karabu*, 16 F. Supp. 2d at 324 (personal jurisdiction cannot be established "based merely upon a defendant's title or position within the corporation, or upon conclusory allegations that the defendant controls the corporation" (collecting cases)).[11]

The Amended Complaints also allege that the Individual Defendants "purposefully and voluntarily placed [the products at issue] into the stream of commerce with the expectation that [they would] be purchased in this District." Gaspari Am. Compl. ¶¶ 20, 23; Mill. Am. Compl. ¶ 15. These allegations are conclusory and, without more, fail to establish personal involvement by the Individual Defendants in the transactions at issue. *See Karabu*, 16 F. Supp. 2d at 324 ("conclusory allegations that the defendant controls the corporation" do not suffice to establish personal jurisdiction).[12]

---

[11]   As one court in this District stated, if a defendant's title or authority over a corporation were enough to subject him or her to personal jurisdiction, then "the President of every company would be subject to jurisdiction in New York based on activities with which he or she had no personal involvement and over which he or she exercised no decisionmaking authority." *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1149 (S.D.N.Y. 1995). That is plainly not the law.

[12]   To support his assertion of personal jurisdiction, Plaintiff also points to the indictment pending against Mr. Wheat and the out-of-district case stating that Mr. Masuda operates Millennium as a sole proprietorship. *See supra* nn.9–10. Unlike a motion to dismiss for failure to state a claim, a motion to dismiss for lack of personal jurisdiction permits the Court to look outside the pleadings. Nevertheless, Mr. Wheat's indictment fails to establish personal jurisdiction because nothing in the indictment alleges that Mr. Wheat's scheme reached New York or that the scheme involved Anavite or any of Gaspari Nutrition's products.

The allegations that Mr. Masuda operates Millennium as a sole proprietorship presents a closer question as to whether this Court has personal jurisdiction over Mr. Masuda, as "a sole proprietorship has no separate legal existence or identity apart from the sole proprietor." *Peng Bai v. Fu Xing Zhuo*, No. 13-CV-05790, 2014 WL 2645119, at *3 (E.D.N.Y. June 13, 2014). The Court, however, need not resolve this question because the Amended Complaint alleges that Millennium is a corporation, *see* Mill. Am. Compl. ¶ 10, and, in any event, the Court has dismissed the claims against Mr. Masuda for failure to state a claim.

For all these reasons, the motions to dismiss the Individual Defendants for lack of personal jurisdiction are granted, and all claims against the Individual Defendants are dismissed with prejudice.[13]

## IV. Defendants' Motions to Limit Damages Based on New York's Economic Loss Rule Are Denied Without Prejudice

Gaspari Nutrition and HTP seek to limit Plaintiff's damages on his negligent products liability claim and general negligence claim based on New York's economic loss rule. *See* Gaspari Mem. of Law at 15.[14]  Vitamin Shoppe moves to dismiss Plaintiff's "tort causes of action" based on this theory (without further specifying the claims to which this motion applies). *See* Vitamin Shoppe Mem. of Law at 11–12.

Under New York law, "a plaintiff who has suffered economic loss, but not personal or property injury, may not recover in tort if the damages are the type remedial in contract." *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) (internal quotation marks and alterations omitted).  Put differently, "tort recovery in strict products liability and negligence against a manufacturer is not available to a downstream purchaser where the claimed losses flow from damage to the property that is the subject of the contract, and personal injury is not alleged or at issue." *N.Y. Methodist Hosp. v. Carrier Corp.*, 68 A.D.3d 830, 831 (2009).

Here, Plaintiff appears to seek damages based on the income and prize money that he lost while he was suspended from UFC, an injury that allegedly resulted from his consuming the Defendants' products.  Gaspari Am. Compl. ¶¶ 182, 190, 194; *see also id.* ¶¶ 111–113.  He also

---

[13]     Because the Court has also dismissed the claims against the Individual Defendants on the merits, the Court enters these dismissals with prejudice.

[14]     Messrs. Gaspari and Wheat made similar motions, but the claims against them have been dismissed in their entirety.

makes conclusory allegations that he suffered "severe pain and anguish" from Defendants' products. *Id.* ¶¶ 182, 190, 194.

The Court finds these allegations too abstract to decide whether the economic loss rule should bar or limit Plaintiff's claims. As to Plaintiff's lost income, it is unclear whether these injuries "flow from damage to the property that is the subject of the contract" and whether they would be recoverable in contract. *N.Y. Methodist Hosp.*, 68 A.D.3d at 831. As to Plaintiff's possible "pain and anguish," Plaintiff's detailed allegations regarding the harmful side effects and long-term dangers of andro, *see* Gaspari Am. Compl. ¶¶ 30–37, raise a plausible claim that he suffered physical injury, in which case the economic loss rule would likely not apply.

For all these reasons, the Court cannot decide whether the economic loss rule applies to Plaintiff's claims until summary judgment. These motions, therefore, are denied without prejudice.

**V.     Vitamin Shoppe's Motions to Dismiss Are Granted in Part and Denied in Part**

Vitamin Shoppe moves to dismiss Plaintiff's claims for breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, breach of express warranty, and false advertising under New York General Business Law § 350. These motions are granted in part and denied in part.

**A.     Vitamin Shoppe's Motion to Dismiss Plaintiff's Claim for Breach of Implied Warranty of Merchantability Is Denied**

"The implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 433 (2d Cir. 2013) (quoting *Saratoga Spa & Bath, Inc. v. Beeche Sys. Corp.*, 230 A.D.2d 326, 330 (3d Dep't 1997)). This standard requires that the goods sold be of "a minimal level of quality." *Id.* at 433–34 (quoting

*Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 258 n.4 (1995)).  This cause of action does not require

malicious intent or even negligence.  Rather, "[t]he cause of action is one involving true 'strict'

liability," and "recovery may be had upon a showing that the product was not minimally safe for

its expected purpose."  *Id.* at 434 (quoting *Denny*, 87 N.Y.2d at 256).

Here, Plaintiff adequately alleges that Anavite contained an illegal and harmful substance

and, therefore, that the product was not minimally safe for its intended purpose.  Vitamin Shoppe

argues that Anavite functioned properly as a dietary supplement and that the product was thus fit

for its ordinary purpose.  *See* Vitamin Shoppe Mem. of Law at 7–8.  The Court disagrees.  The

harmful side effects of andro, *see* Gaspari Am. Compl. ¶¶ 31–37, along with the fact that it is

banned by major anti-doping authorities and listed in the Controlled Substances Act, *see id.*

¶¶ 60–62, makes it plausible that Anavite was not minimally safe for its ordinary purpose.

Vitamin Shoppe also argues that the Gaspari Amended Complaint does not actually allege

that Plaintiff purchased Anavite from Vitamin Shoppe at any time.  *See* Vitamin Shoppe Mem. of

Law at 7.  Vitamin Shoppe argues that because the Gaspari Amended Complaint fails to allege

that Plaintiff was in privity with Vitamin Shoppe, New York law requires Plaintiff to plead

personal injury.  *Id.*  But as the Court has discussed, Plaintiff does plead personal injury (albeit

without a great deal of detail).  *See supra* Part IV (discussing New York's economic loss rule).

Thus, Vitamin Shoppe's argument fails.

For all these reasons, Vitamin Shoppe's motion to dismiss Plaintiff's claim for breach of

implied warranty of merchantability is denied.

### B.     Vitamin Shoppe's Motion to Dismiss Plaintiff's Claim for Breach of Implied Warranty of Fitness for a Particular Purpose Is Granted

Under New York law, "[w]here the seller at the time of contracting has reason to know

any particular purpose for which the goods are required and that the buyer is relying on the

seller's skill or judgment to select or furnish suitable goods," there is an implied warranty that "the goods shall be fit for such purpose.'"  N.Y. U.C.C. Law § 2-315; *see also Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 556 (S.D.N.Y. 2016).  Importantly, "the implied warranty of fitness for a particular purpose does not arise in every consumer sale, but only when a seller knows or has reason to know the particular purpose for which a buyer requires goods, and also knows or should know that the buyer is relying on his special knowledge."  *Catalano*, 167 F. Supp. 3d at 558 (quoting *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 249 (2d Cir. 1986)).

Here, the Gaspari Amended Complaint fails to allege that Plaintiff had any communications with Vitamin Shoppe employees, let alone that Plaintiff gave them reason to believe that he would consume Anavite for a particular purpose, such as mixed-marital arts or competitive sports.

Thus, Vitamin Shoppe's motion to dismiss Plaintiff's claim for breach of implied warranty of fitness for a particular purpose is granted.

**C.     Vitamin Shoppe's Motion to Dismiss Plaintiff's Claim for Breach of Express Warranty Is Granted**

An express warranty is an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain."  N.Y. U.C.C. Law § 2-313(1)(a).  "To state a claim for breach of express warranty under New York law, a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach."  *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) (collecting cases).  "[A] plaintiff complaining of breach of express warranty must 'set forth the terms of the warranty upon which he relied.'"

*Goldemberg*, 8 F. Supp. 3d at 482 (quoting *Parker v. Raymond Corp.*, 87 A.D.3d 1115, 1117 (2d Dep't 2011)).

The Gaspari Amended Complaint alleges no express warranties that Vitamin Shoppe made to Plaintiff, other than representations in Vitamin Shoppe's Form 10-K annual report, which was filed with the Securities and Exchange Commission ("SEC"). Gaspari Am. Compl. ¶ 100. That report stated that Vitamin Shoppe uses "established quality control operating procedures" and that it refuses to sell "those products that do not comply with the law or contain ingredients that we believe may be unsafe." *Id.* But Plaintiff does not allege that he relied on this statement as the basis for his purchase—or even that he read the statement prior to his purchase—as New York law requires. *See Goldemberg*, 8 F. Supp. 3d at 482; *CBS Inc. v. Ziff-Davis Publ'g Co.*, 75 N.Y.2d 496, 503 (1990). Thus, the Gaspari Amended Complaint fails to state a claim for breach of express warranty.

For all these reasons, Vitamin Shoppe's motion to dismiss Plaintiff's claim for breach of express warranty is granted.

### D. Vitamin Shoppe's Motion to Dismiss Plaintiff's Claim for False Advertising Under New York General Business Law § 350 Is Granted

New York General Business Law § 350 states that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful." N.Y. Gen. Bus. Law § 350. This statute applies only to misrepresentations made in the context of an "advertisement." *See, e.g.*, *Cohen v. Casper Sleep Inc.*, No. 17-CV-9325, 2018 WL 3392877, at *9 (S.D.N.Y. Jul. 12, 2018); *Fitzgerald v. Chase Home Fin., LLC*, No. 10-CV-4148, 2011 WL 9195046, at *3 (S.D.N.Y. Feb. 28, 2011); *Keeney v. Kemper Nat'l Ins. Cos.*, 960 F. Supp. 617, 623 (E.D.N.Y. 1997). While the statute does not specifically define "advertisement," courts in this District have looked to § 43(a) of the Lanham Act for a definition,

as the Lanham Act and New York's General Business Law are "substantially the same" in many respects. *Avon Prods., Inc. v. S.C. Johnson & Son, Inc.*, 984 F. Supp. 768, 800 (S.D.N.Y. 1997); *see also, e.g.*, *Mimedx Grp., Inc. v. Osiris Therapeutics, Inc.*, No. 16-CV-3645, 2017 WL 3129799, at *14 (S.D.N.Y. July 21, 2017); *Samsung Display Co. v. Acacia Research Corp.*, No. 14-CV-1353, 2014 WL 6791603, at *5 (S.D.N.Y. Dec. 3, 2014). Under § 43(a) of the Lanham Act, cognizable misrepresentations must be "in the context of commercial advertising or commercial promotion" that is "disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Samsung*, 2014 WL 6791603, at *5 (collecting cases); *see also Mimedx*, 2017 WL 3129799, at *14.

If a misrepresentation is made in the context of an advertisement, a plaintiff must show that the advertisement is "consumer-oriented" to be actionable under General Business Law § 350. *Koch v. Greenberg*, 626 F. App'x 335, 340 (2d Cir. 2015). "Consumer-oriented" conduct is conduct that has "a broader impact on consumers at large" and that could "potentially affect similarly situated consumers." *Id.* (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995)).

As the Court has discussed, the Gaspari Amended Complaint does not allege that Vitamin Shoppe made any representations, other than the statement about its quality-control procedures that is contained in its Form 10-K. *See* Gaspari Am. Compl. ¶ 100. A statement in an SEC filing is clearly not an "advertisement" within the meaning of New York's General Business Law, as it is directed at investors and regulators, not consumers. Plaintiff has made no showing that the filing was disseminated to potential purchasers of Vitamin Shoppe's products, as New York law requires.

For all these reasons, the Court grants Vitamin Shoppe's motion to dismiss Plaintiff's claims for false advertising under New York General Business Law § 350.

## VI.    Plaintiff's Motion for Leave to Amend Is Granted in Part and Denied in Part

Plaintiff moves to amend the Gaspari Amended Complaint in response to Vitamin Shoppe's motion to dismiss.  *See* Pl.'s Mem. of Law at 7–12; *id.* Ex. B ("Proposed Second Amended Complaint").  The motion is granted in part and denied in part.

Leave to amend a complaint should be "freely given when justice so requires."  Fed. R. Civ. P. 15(a).  While the usual practice upon granting a motion to dismiss is to allow leave to replead, a court may dismiss without leave to amend when amendment would be futile. *See Oneida Indian Nation of New York v. City of Sherrill*, 337 F.3d 139, 168 (2d Cir. 2003) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)); *Cohen v. Citibank*, No. 95-CV-4826, 1997 WL 883789, at *2 (S.D.N.Y. Feb. 28, 1997).  Specifically, "[w]here a proposed amended complaint cannot itself survive a motion to dismiss, leave to amend would be futile and may clearly be denied."  *Donovan v. Am. Skandia Life Assur. Corp.*, 217 F.R.D. 325, 325 (S.D.N.Y. 2003) (citing *In re Am. Exp. Co. Shareholder Litig.*, 39 F.3d 395, 402 (2d Cir. 1994)), *aff'd*, 96 F. App'x 779 (2d Cir. 2004).

Here, Plaintiff seeks to add six paragraphs alleging that he entered a Vitamin Shoppe retail store in January 2015, asked an employee for a multivitamin recommendation, and "discussed his career as a UFC athlete" with the employee.  Proposed Second Am. Compl. ¶¶ 103–108.  Plaintiff then purchased Anavite from the Vitamin Shoppe store.  *Id.* ¶ 106. Plaintiff also alleges that he purchased Anavite from Vitamin Shoppe on five other occasions.  *Id.* ¶ 108.

The Court grants leave to amend as to Plaintiff's claim for breach of implied warranty of fitness for a particular purpose.  The Proposed Second Amended Complaint alleges that Plaintiff

"discussed his career as a UFC athlete" with a Vitamin Shoppe sales associate and asked for a

recommendation for a multivitamin.  Proposed Second Am. Compl. ¶¶ 104–107.  Vitamin

Shoppe argues that although the Vitamin Shoppe employee knew that Plaintiff competed in the

UFC, the employee did not know that Plaintiff would consume Anavite "in conjunction with

[that] competition," nor did he know that that the competition would require drug testing.

Vitamin Shoppe Reply Mem. of Law, Dkt. 43, at 7–8.  But New York law requires only that a

seller have *reason to know* of a buyer's particular purpose.  N.Y. U.C.C. Law § 2-315.  Knowing

that Plaintiff was a professional fighter, it was no great leap for the Vitamin Shoppe employee to

infer that Plaintiff would take the multivitamin in connection with his competition.  Nor is it

outside the realm of reasonable knowledge that professional competitions require drug testing.

Thus, the Proposed Second Amended Complaint adequately alleges a claim for breach of implied

warranty of fitness for a particular purpose, and leave to amend is granted with respect to that

claim.[15]

The Court denies leave to amend as to Plaintiff's claim for breach of express warranty.

The Proposed Second Amended Complaint alleges that a Vitamin Shoppe sales associate

recommended Anavite to Plaintiff, but the pleading does not allege that the employee made any

other representations or statements in connection with the sale.  Plaintiff provides no authority

for the argument that a recommendation can constitute an express warranty, nor does Plaintiff

explain how any express warranty that was given was breached.  Whatever implied warranties

the employee's recommendation carried, the Proposed Second Amended Complaint fails to

---

[15]     Because the Court has denied, based on the Gaspari Amended Complaint, Vitamin Shoppe's motion to
dismiss Plaintiff's claim for breach of implied warranty of merchantability, the motion for leave to amend that claim
is denied.

allege an express warranty. Thus, amending this claim would be futile, and the motion for leave to amend is denied as to this claim.

The Court also denies leave to amend as to Plaintiff's claim for false advertising under New York General Business Law § 520. While the Proposed Second Amended Complaint alleges that a Vitamin Shoppe employee made a recommendation to Plaintiff, it fails to allege that this single employee's recommendation was disseminated to the public at large or could potentially affect similarly situated consumers. Thus, the Proposed Second Amended Complaint fails to allege that this representation was an "advertisement" or was sufficiently "consumer-oriented" under § 520. For these reasons, leave to amend would be futile, and the motion for leave to amend is denied as to this claim.

In short, the Court grants Plaintiff leave to amend the Gaspari Amended Complaint with respect to his claim for breach of implied warranty of fitness for a particular purpose. The Court denies leave to amend with respect to the claims for breach of express warranty and false advertising.[16]

## CONCLUSION

For all the foregoing reasons, Defendants' motions are GRANTED IN PART AND DENIED IN PART. Specifically:

1.      The Court GRANTS the motions to dismiss Plaintiff's claims for fraud, assault and battery, and reckless or intentional infliction of emotional distress; these claims are

---

[16]      While fact discovery has already closed, Plaintiff's response (containing his motion for leave to amend) was filed in February. It is likely, therefore, that Vitamin Shoppe has already conducted discovery relating to the new allegations in Plaintiff's Proposed Second Amended Complaint. If, however, Vitamin Shoppe can make a showing that it failed to obtain relevant discovery, Vitamin Shoppe may move to reopen discovery for the limited purpose of investigating Plaintiff's new allegations in the Proposed Second Amended Complaint.

DISMISSED WITH PREJUDICE as to Gaspari Nutrition, HTP, Richard Gaspari, and Jared Wheat.

2.      The Court GRANTS Matthew Masuda's, Richard Gaspari's, and Jared Wheat's motions to dismiss for failure to state a claim and for lack of personal jurisdiction; all claims against these three Defendants are DISMISSED WITH PREJUDICE.

3.      The motions to limit damages or to dismiss claims under the economic loss rule are DENIED WITHOUT PREJUDICE.

4.      Vitamin Shoppe's motion to dismiss Plaintiff's claim for breach of implied warranty of merchantability is DENIED.

5.      Vitamin Shoppe's motion to dismiss Plaintiff's claim for breach of implied warranty of fitness for a particular purpose is GRANTED; that claim is DISMISSED as to Vitamin Shoppe WITH LEAVE TO AMEND.

6.      Vitamin Shoppe's motion to dismiss Plaintiff's claim for breach of express warranty is GRANTED; that claim is DISMISSED WITH PREJUDICE as to Vitamin Shoppe.

7.      Vitamin Shoppe's motion to dismiss Plaintiff's claim for false advertising under New York General Business Law § 350 is GRANTED; that claim is DISMISSED WITH PREJUDICE as to Vitamin Shoppe.

8.      Plaintiff's motion for leave to amend the Gaspari Amended Complaint is GRANTED as to the claim for breach of implied warranty of fitness for a particular purpose. The motion for leave to amend is DENIED as to the claims for breach of express warranty, false advertising, and breach of implied warranty of merchantability.

9.      The Clerk of Court is respectfully directed to close the open motions at Dkts. 22, 30, and 35.  The Clerk is also directed to terminate Defendants Matthew Masuda, Richard Gaspari, and Jared Wheat from the case.

**SO ORDERED.**

**Date:  August 6, 2018**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**