USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/31/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                                        :      17-CV-8047 (VEC)

*In re Lyman Good Dietary Supplements Litigation* :

                                                                        :      OPINION AND ORDER
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

       This action stems from Plaintiff Lyman Good's suspension from the Ultimate Fighting Championship ("UFC") after testing positive for illicit anabolic steroids. Plaintiff claims that Defendants sold him a dietary supplement, Anavite, that contained the illicit steroids, thereby causing his suspension. The Court previously granted in part Defendants' Motion to Dismiss. Dkt. 57. Plaintiff filed a Second Amended Complaint on August 15, 2018. Dkt. 60. Now before the Court are (1) Plaintiff's motion to exclude the testimony of Defendants' Expert Henry Fuentes[1] and (2) Defendants' motion to exclude the testimony of Plaintiff's Expert Shawn Wells. Dkts. 106, 111. Because Mr. Fuentes' proffered testimony does not offer any "scientific, technical, or specialized knowledge" that would assist the trier of fact, and Mr. Wells' testimony is irrelevant, unreliable, and does not comply with the requirements of Rule 26 of the Federal Rules of Civil Procedure, both motions are GRANTED.

## I.    BACKGROUND

       Plaintiff is a professional Mixed Martial Arts fighter who has competed in the UFC since July 2015. Second Am. Compl. ¶ 15. While under contract with the UFC, Plaintiff consumed Anavite, a dietary supplement manufactured by Defendants. *Id*. ¶¶ 2, 63, 69. On October 24, 2016, the United States Anti-Doping Agency ("USADA") suspended Plaintiff after he tested

---

[1]    Plaintiff's motion to preclude Defendants' experts from testifying also argued that Steve J. Bannister and Matthew C. Lee's testimony should be excluded. In Plaintiff's Reply Memorandum, Dkt. 117, however Plaintiff withdrew his opposition to those two experts. Thus, any reference in this Opinion to Plaintiff's Motion to Preclude Defendants' Expert applies only to the proffered testimony of Henry Fuentes.

1

positive for 1-Androstenedione ("1-Andro"), an androgenic-anabolic steroid. *Id.* ¶¶ 5, 16. Plaintiff alleges that Anavite contained 1-Andro but Defendants did not disclose that fact on the supplement's label. *Id*. ¶¶ 7-8. Plaintiff's Second Amended Complaint reasserts claims against Defendants for breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, deceptive acts or practices under New York General Business Law § 349; false advertising under New York General Business Law § 350, products liability under a negligence theory, products liability under a strict liability theory, reckless or intentional infliction of emotional distress, and general negligence. *See* Second Am. Compl. ¶¶ 103-75.

## I.  Defendants' Expert Henry Fuentes

Plaintiff seeks to exclude the testimony of Defendants' Expert Henry Fuentes on the grounds that Fuentes does not offer any "scientific, technical, or specialized knowledge" that would assist the jury in its determination of damages. Pl. Mem. of Law, Dkt. 113 at 3.

Fuentes is offered as an expert to testify on the economic damages and lost profits incurred by Plaintiff as a result of his suspension. Fuentes Report, Dkt. 110-5 at 1. Fuentes' report concludes that Plaintiff did not incur "any documented economic damages as a consequence of his six-month suspension by the UFC." *Id.* at 8.

Fuentes is the Executive Vice President of Economatrix Research Associates, Inc. *Id.* at 1. He holds an undergraduate degree in accounting and a master's degree in Finance. *Id.* He is a Certified Public Accountant and Certified Fraud Examiner. *Id.*

In formulating his expert report, Fuentes states that he considered Plaintiff's tax returns and tax transcripts from 2009 to 2017, UFC contracts and royalty statements, NutraBio Fight check statements, and a Zuffa, LLC Bout fight agreement. *See* Fuentes Report 2-3. To reach his

2

conclusion that Plaintiff incurred no economic damages as a consequence of his six-month suspension from October 2016 to April 2017, Fuentes summarized Plaintiff's reported income from his tax transcripts and analyzed the frequency of his fights from 2005 to 2018. Fuentes Report at 9, 11. Fuentes calculated Plaintiff's mean income from 2010 to 2016 by averaging those years of income. Fuentes Report at 5. Fuentes calculated the average number of fights per year that Plaintiff participated in from 2005 to 2018 by averaging thirteen years of reported data. Fuentes Report at 11.

## II. Plaintiff's Expert Shawn Wells

Defendants seek to exclude the testimony of Plaintiff's Expert Shawn Wells. Dkt. 106. Defendants argue that portions of Wells' testimony are irrelevant, portions concern topics about which Wells is not qualified to offer an opinion, and the entire Report is unreliable. *See* Defs.' Mem. of Law, Dkt. 107 at 1-4.

Plaintiff seeks to offer Wells as an expert in: (1) dietary supplement manufacturing, (2) dietary supplement labeling, (3) analytical chemistry, (4) the pharmacological impact of steroids on the human body, (5) the regulation of dietary supplements and the legality of Anavite, (6) the expectations of athletes, and (7) as a rebuttal witness to Defendants' experts, including one set to testify about damages. *See* Defs.' Mem. of Law at 7.

Wells is a nutritional biochemist at the University of North Carolina Chapel Hill. Wells Report, Dkt. 108-1 ¶ 1.[2] He is a Registered Dietitian, a Certified Sports Nutritionist, and a Fellow in the International Society of Sports Nutrition. *Id.*

The Court notes at the outset that the Wells Report is largely incomprehensible and very difficult to follow. It is unclear whether and when Wells is offering an opinion on a subject as

---

[2] The Wells report is unpaginated and lacks paragraph numbers. The paragraphs cited in this Opinion refer to the paragraph numbers inserted by Defendants.

opposed to when he is asserting facts. The report does not contain any reference to the data, information, or methodology used to support any of the statements made. Putting aside the lack of citations or underlying foundation, the Wells Report purports to offer information regarding (1) the various drugs detected when Anavite was tested in a lab, (2) the differences between Andro, 1-Andro, and DHEA, (3) whether Anavite is a permissible supplement pursuant to UFC rules, (4) the regulation of dietary supplements, and (5) the expectations of athletes taking dietary supplement pills. *See generally* Wells Report.

## II. DISCUSSION

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It provides that a person "qualified as an expert by knowledge, skill, experience, training, or education" may offer opinion testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

While the proffering party bears the burden of establishing admissibility under Rule 702 by showing that (1) the expert is qualified; (2) the proposed opinion is based on reliable data and methodology; and (3) the proposed testimony would be helpful to the trier of fact, the district court acts as the "ultimate gatekeeper" against unreliable expert testimony. *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (internal quotation marks omitted); *see e.g. Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005); *Estate of Jaquez v. City of New York*, 104 F.

Supp. 3d 414, 426 (S.D.N.Y. 2015), *aff'd sub nom. Estate of Jaquez by Pub. Adm'r of Bronx Cty. v. City of New York*, 706 F. App'x 709 (2d Cir. 2017). This gatekeeping obligation "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

The threshold question for the Court is whether the "proffered expert testimony is relevant." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002). If the proposed testimony is relevant, the Court must then determine "whether the proffered testimony has a sufficiently reliable foundation to permit it to be considered." *Id.* (internal citation and quotation marks omitted). The Supreme Court has laid down several factors to consider in making this inquiry, including "whether a theory or technique . . . can be (and has been) tested"; "whether the theory or technique has been subjected to peer review and publication"; whether uniform "standards controlling the technique's operation" exist; and whether the theory or technique enjoys "general acceptance" within the relevant scientific or professional community. *Daubert*, 509 U.S. at 593-94 (internal quotation marks omitted). The Court's ultimate objective is to "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152.

**I.     Defendants' Expert Henry Fuentes**

Plaintiff's motion to exclude the testimony of Henry Fuentes is granted. The proposed testimony is not "scientific, technical, or specialized knowledge." Fed. R. Evid. 702(a).

Under Rule 702, expert testimony is admissible if the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." *Id.* A court should not admit expert testimony that is "directed solely

5

to lay matters which a jury is capable of understanding and deciding without the expert's help." *United States v. Mulder*, 273 F.3d 91, 101 (2d Cir. 2001) (quoting *United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991)); *see also* 4 Weinstein's Federal Evidence § 702.03 (2019) (expert testimony is generally unhelpful and not permitted when it concerns "factual issues that are within the knowledge and experience of ordinary lay people, because it would not help the trier of fact to understand the evidence or determine a fact in issue."). When the proffered testimony contains facts that the jury is "fully capable of understanding… through the use of its common knowledge and common sense" or when the expert testimony offers nothing more than what "lawyers representing the parties could provide during their closing arguments," it must be excluded. 4 Weinstein's Federal Evidence § 702.03 (2019).

Fuentes' expert report is not based on any "scientific, technical, or specialized" knowledge. Fed. R. Evid. 702(a). Fuentes admits in his report that his analysis is limited by the fact that Plaintiff failed to produce complete copies of his individual tax returns. Fuentes Report at 3-4. As a result, Fuentes relied on one complete tax return from 2011 and tax transcripts for every other year from 2009 to 2017 to do simple calculations and to create a basic bar graph. *See* Fuentes Report at 9. The lack of any tax returns or complex financial documents renders Fuentes' qualifications superfluous. The tax transcripts contain only his total declared income, net business income, and taxable income. Fuentes Report at 4, 9. Fuentes has simply separated out those numbers and placed them on a graph over the span of nine years to produce Table 1. *Id.* at 9. Fuentes also calculated an average income from 2010 to 2016 by averaging seven years of income. *Id.* at 5. None of this information or proposed testimony constitutes "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702(a); *see United States v. Sepulveda-Hernandez*, 752 F.3d 22, 34 (1st Cir. 2014) ("Simple arithmetic, such as ordinary multiplication,

is a paradigmatic example of the type of everyday activity that goes on in the normal course of human existence.").

Fuentes' report also contains a chart, labeled Table 2, showing the number of fights in which Plaintiff participated from 2005 to 2018. Fuentes Report at 11. Fuentes asserts that based on this data, Plaintiff fought 1.85 times per year, on average. *Id.* at 6. That conclusion resulted from calculating the average of thirteen numbers, a basic mathematical calculation taught in grade school. Fuentes also observes that in the first eight years of his career, Plaintiff fought seventeen matches, but that in the last six years, he has fought only eight matches. *Id.* at 6-7. From these numbers, Fuentes concludes that, lately, Plaintiff has been "fighting fewer fights per year." *Id.* at 7. This conclusion is obvious and requires no specialized knowledge to reach. In sum, Table 2 also fails to present any information or conclusions that the jury could not reach with their own "common knowledge and common sense." 4 Weinstein's Federal Evidence § 702.03 (2019).

The only portion of Fuentes' report that engages his specialized knowledge is his analysis of Plaintiff's 2011 tax return. *See* Fuentes Report at 4. Fuentes asserts that, if "we assume that [2011] is typical of the [plaintiff's] expenses," the "profitability or profit margin of [plaintiff's] self-employment activities is low – 22%." *Id*. This opinion, which is based on a single data point, cannot reasonably be extrapolated to reach a reliable opinion of Plaintiff's profitability from 2012 to 2017. First, Fuentes acknowledges that Plaintiff has not provided his tax returns from 2012 to 2017 and that the tax transcripts lack the necessary details to support a complete opinion. *See id.* at 3-4. Second, Fuentes acknowledges that he cannot ascertain the exact amount Plaintiff makes from his deal with Reebok, which would contribute to "self-employment activities" and would affect the profitability calculation. *See id.* at 5. Thus, without the tax

7

returns or information about the Reebok deal, any opinion regarding Plaintiff's profitability is speculative and therefore must be excluded. *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 213-14 (2d Cir. 2009) (The court "should exclude expert testimony if it is speculative or conjectural.").

Because Fuentes' testimony would offer nothing more than what Defendants' attorneys can argue in closing arguments or what the jury is already "capable of understanding and deciding without the expert's help" or is unreliable, it does not constitute "scientific, technical, or specialized" knowledge that is helpful to the jury. *Mulder*, 273 F.3d at 101 (quoting *Castillo*, 924 F.2d at 1232).

**Plaintiff's Expert Shawn Wells**

Defendants' motion to preclude the testimony of Shawn Wells is granted. Portions of Wells' report are irrelevant, and the entire report is unreliable. Moreover, portions of Wells' proffered testimony relate to subjects about which Wells is not qualified to testify. Finally, the Wells Report does not comply with Rule 26 of the Federal Rules of Civil Procedure.

**A. Portions of the Wells Report Are Irrelevant**

The threshold question for the Court in determining the admissibility of expert testimony is whether the "proffered expert testimony is relevant." *Amorgianos*, 303 F.3d at 265. Testimony is relevant if it "assist[s] the trier of fact" in understanding and resolving the primary issues in the case. *In re Fosamax Prods. Liab. Litig.,* 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009). Relevance can be understood as a question of "fit"—"whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id.* (internal citation omitted).

Here, the majority of the Wells Report is not "tied to the facts of the case" and therefore will not aid the jury in resolving the case. *Id.* Although the primary issue in this case is whether Plaintiff's ingestion of Anavite caused the 1-Andro that was detected in Plaintiff's urine, a significant portion of the Wells Report—paragraphs 2, 3, and 6-14—is devoted to discussing the presence of Andro and Dehydroepiandrosterone ("DHEA") in Anavite. *See* Wells Report ¶¶ 2, 3, 6-14. Defendants argue, and Wells confirms, that Andro and DHEA are distinct substances from 1-Andro. Wells Dep., Dkt. 108-3 at 36:18-24, 37:10-12; 57:19-25; 58:11-20. In addition, Wells acknowledged that neither Andro nor DHEA were detected in Plaintiff's urine; only 1-Andro was detected. Wells Dep. at 38:18-21, 43:3-9, 45:14-19, 50:10-12. Finally, Wells asserts that while DHEA can metabolically convert into Andro, it does not convert into 1-Andro. Wells Dep. at 56:22-57:25. As a result, the portions of the Wells Report discussing the presence of DHEA and Andro in Anavite are irrelevant, unhelpful, and have the potential to mislead or confuse a jury.

**B. Wells Is Not Qualified to Offer Testimony on Certain Subjects**

"A court should admit specialized expert testimony if the witness is 'qualified as an expert by knowledge, skill, experience, training or education.'" *Nora Bevs., Inc. v. Perrier Group of Am. Inc.*, 164 F.3d 736, 746 (2d Cir. 1998) (quoting Fed. R. Evid. 702). To determine whether a potential expert witness is qualified, "courts compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004). If the witness has superior knowledge on the subject matter of the proposed testimony, and that knowledge would assist the jury in understanding a fact or issue in the case, then he may be qualified to provide expert testimony on that issue. *See id*.

Here, Wells is not qualified to offer expert testimony on many of the proposed subjects. Wells is being offered as an expert in: (1) dietary supplement manufacturing, (2) dietary supplement labeling, (3) analytical chemistry, (4) the pharmacological impact of steroids on the human body, (5) the regulation of dietary supplements and the "legality" of Anavite, (6) the expectations of athletes, and (7) as a rebuttal witness to Defendants' experts, including one proposed to testify about damages.[3]

Mr. Wells has a degree in nutritional biochemistry. He has no legal training, no experience with the FDA, and no financial background. As a result, he is not qualified to testify about the regulation of dietary supplements, the "legality" of Anavite, the internal expectations of athletes, or lost income damages. In addition, because Wells does not have a degree in analytical chemistry and admits that he has never worked in an analytical laboratory, he has failed to demonstrate that he is qualified to testify about the "meaning of the lab results" or complex chemical conversions.

**C. The Wells Report Is Unreliable**

To determine whether a proposed expert opinion is reliable, courts must consider several factors, including "whether a theory or technique . . . can be (and has been) tested"; "whether the theory or technique has been subjected to peer review and publication"; whether uniform "standards controlling the technique's operation" exist; and whether the theory enjoys "general acceptance" within an identifiable relevant scientific or professional community. *Daubert*, 509 U.S. at 593–94 (1993). While the *Daubert* factors do not constitute a rigid checklist and the reliability inquiry is a flexible one, the expert's analysis must nonetheless be "reliable at every step." *Amorgianos*, 303 F.3d at 267. Put differently, there cannot be "too great an analytical gap

---

[3] Given that Fuentes will be precluded from testifying, this proposed subject matter for his testimony is moot.

between the data and the opinion proffered" connected only by the "*ipse dixit* of the expert." *Id.* at 266 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

The entire Wells Report is unreliable and largely incomprehensible. The facts asserted have no citations, beyond referencing the "testing results," Wells Report ¶ 6, and the Report has no reference to the data, information, or methodology used to formulate the opinions provided. *See* Wells Report. As a result, there is no way for the Court to "undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Amorgianos*, 303 F.3d at 267. Beyond the lack of citations, there is no explanation of the bases for any of his opinions, which leaves the Court unable to determine whether the expert has "good grounds for his [] conclusions." *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 746 (3d Cir. 1994) (internal quotation marks omitted); *see Daubert,* 509 U.S. at 590. Although Wells makes a cursory reference in his deposition to relying on "PubMed and KEGG Pathways" in forming his opinions, that is insufficient to allow examination or verification of the underlying facts and theories used to formulate his opinions. Wells Dep. at 16:14-20.

As mentioned *supra*, much of the Wells Report is irrelevant. The relevant portions of the Report that discuss 1-Andro are unreliable and therefore inadmissible. None of the paragraphs discussing 1-Andro contains any citations to support the facts and claims made. *See* Wells Report ¶¶ 4, 15-17. The most significant part of the Wells Report is the suggestion that Andro and 1-Andro can be in the "same metabolic pathways." Wells Report ¶ 17. It is entirely unclear, however, whether Wells is offering an opinion that these hormones can convert into each other in the body while being metabolized or whether he is opining that such a conversion could have occurred in the Anavite capsules prior to ingestion. Whatever opinion the report is proffering, it

11

contains no underlying basis or support for the theory that the two chemicals "can be in the same metabolic pathways," nor any indication that his theory "has been tested," has been "subjected to peer review and publication," or enjoys "general acceptance" within the scientific community. *Daubert*, 509 U.S. at 593-94. As a result, the Court has no way to determine whether the proffered testimony is reliable. *Kumho Tire Co.,* 526 U.S. at 157 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert") (internal citation and quotation marks omitted). Furthermore, Wells' statement that the degree to which this potential conversion happens, if it happens at all, is "highly variable and not clear," Wells Report ¶ 17, makes his entire theory speculative and unhelpful. *See Zerega Ave. Realty Corp*, 571 F.3d at 213-14.

Because the Wells Report fails to meet the requirement that "each proposed opinion [be] based upon reliable data and reliable methodology," the proffered testimony is inadmissible. *In re Puda Coal Sec., Inc*., 30 F. Supp. 3d 230, 250 (S.D.N.Y. 2014).

**D. The Wells Report Does Not Comply with Federal Rule of Civil Procedure 26**

In advance of expert testimony, Federal Rule of Civil Procedure 26(a)(2)(B) requires parties to disclose written reports, "prepared and signed by the [expert] witness," containing "(i) a complete statement of all opinions the witness will express and the basis and reasons for them [and] (ii) the facts or data considered by the witness in forming them."

The Wells Report does not comply with Fed. R. Civ. P. 26(a)(2)(B) in multiple ways. First, the report is unsigned. More significantly, as explained *supra*, the Report contains no statement of the bases for the opinions expressed and does not include the "facts or data considered" by Wells in forming his opinions, beyond a vague reference to "testing results."

Wells Report ¶ 6.  Because these failures are not "substantially justified or [. . .] harmless," Rule 26 is an alternative basis to exclude Wells' proffered testimony.  *See Mfon v. Cty. of Dutchess*, 2017 WL 946303, at *4-5 (S.D.N.Y. Mar. 9, 2017) ("[W]here Plaintiff makes no attempt to amend the Report, justify or assert the harmlessness of the omissions, or even address Defendants' arguments regarding the failure to comply with Rule 26, preclusion is appropriate."), *aff'd*, 722 F. App'x 46 (2d Cir. 2018).

## III.  CONCLUSION

For the foregoing reasons, Plaintiff's motion to preclude Defendants' expert Henry Fuentes from offering his report or testifying is GRANTED.  Defendants' motion to preclude Plaintiff's expert Shawn Wells from offering his report or testifying is also GRANTED.  The Clerk of Court is respectfully directed to terminate the open motions at docket entries 106 and 111.

Defendants' may file a motion for summary judgment no later than **December 6, 2019**. Plaintiff must file his response to Defendants' motion no later than **January 8, 2020**. Defendants' must file any reply in support of their motion no later than **January 24, 2020**.

As the Court has previously offered the parties, upon a joint request, the Court is happy to refer the parties for a settlement conference.

**SO ORDERED.**

Date:  **October 31, 2019**  **VALERIE CAPRONI**
      **New York, New York**            **United States District Judge**