USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/22/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :     17-CV-8047 (VEC)
*In re Lyman Good Dietary Supplements Litigation*             :
                                                              :     OPINION AND ORDER
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

This action stems from Plaintiff Lyman Good's suspension from the Ultimate Fighting Championship ("UFC") after testing positive for 1-androstenedione ("1-A"), an illicit anabolic steroid. Plaintiff claims that Anavite, a dietary supplement sold and manufactured by Defendants, contained 1-A and caused his positive drug test and resulting suspension. Plaintiff asserts claims for: (i) breach of express warranty; (ii) breach of implied warranties; (iii) violations of New York General Business Law §§ 349-50; (iv) products liability under strict liability and negligence theories; and (v) general negligence. *See* Second Am. Compl. ("SAC"), Dkt. 60. Defendants have moved for summary judgment on all claims pursuant to Federal Rule of Civil Procedure 56. Dkt. 126. For the following reasons, Defendants' motion is GRANTED.

## BACKGROUND[1]

Plaintiff is a professional mixed martial arts fighter who has competed in the UFC since July 2015. Defs.' 56.1 Stmt. ¶ 1. The UFC subjects its athletes to a performance enhancing drug ("PED") monitoring program overseen by the United States Anti-Doping Agency ("USADA"). *Id.* ¶ 2. As part of his contract with the UFC, Plaintiff agreed to submit to random PED tests

---

[1] All facts described herein are undisputed unless otherwise stated. The Court will refer to the parties' submissions as follows: Defendants' Memorandum of Law in support of their motion for summary judgment, Dkt. 126-1, as "Defs.' Mem. of Law"; Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts, Dkt. 126-2, as "Defs.' 56.1 Stmt."; the Declaration of David Marck in support of Defendants' motion, Dkt. 126-3, as "Marck Decl."; Plaintiff's Memorandum of Law in Opposition to Defendants' Motion, Dkt. 129, as "Pl. Mem. of Law"; Plaintiff's Statement of Material Facts in Dispute Pursuant to Local Civil Rule 56.1, Dkt. 128, as "Pl. 56.1 Stmt."; Defendants' Response to Plaintiff's Additional Factual Allegations, Dkt. 130-1, as "Defs.' 56.1 Resp. Stmt."

1

administered by the USADA.  *Id*. ¶ 3.  On October 14, 2016, Plaintiff took a PED test; on October 24, 2016, the lab results revealed that Plaintiff had tested positive for 1-A and its metabolite 1-(5α)-androsten-3α-o1-17-one.[2]  *Id*. ¶¶ 4-5; Marck Decl., Ex. 1.  1-A is a banned PED and its presence in Plaintiff's urine would typically result in suspension from the UFC.  *Id*. ¶ 6.  Indeed, after Plaintiff tested positive for 1-A, the USADA suspended him for two years; his suspension was later reduced to six months.  Pl. 56.1 Stmt. ¶ 42.

At some point before his drug test in October 2016, Plaintiff claims he consumed Anavite, a multivitamin sold and manufactured by Defendants.[3]  *Id*. ¶¶ 35-36; Defs.' 56.1 Stmt. ¶ 7.  Although it does not appear as an ingredient on the vitamin's label, Plaintiff alleges that Anavite contains 1-A, and that it was his consumption of Anavite that caused him to test positive for 1-A.  Defs.' 56.1 Stmt. ¶ 7.  Prior to submitting his urine sample to the USADA for testing, Plaintiff completed a "Declaration of Use," setting forth the "prescription/non-prescription medications, any infusions and/or injections, dietary supplements and/or other substances taken in the last seven (7) days (including: vitamins, minerals, herbs, proteins, amino acids, and any other dietary supplements)."  *Id*. ¶ 24; Marck Decl. Ex. 8.  The declaration required Plaintiff to certify that he had reviewed the substances listed on the declaration and to confirm that it was complete and accurate.  Defs.' 56.1 Stmt. ¶ 25.  Plaintiff did not list Anavite on his USADA declaration, although he did list over a dozen other dietary supplements, including another

---

[2]   1-androstenedione (or 1-A) is the common name for "5α-1-androstene-3,17-dione," which is an androstane analog with an α-bonded hydrogen on carbon 5, a double bond between carbons 1 and 2, and double-bonded oxygens at carbons 3 and 17.  Defs.' 56.1 Stmt. at ¶ 8; Marck Decl. Ex. 2 at ¶ 32 (Expert Report of Steve J. Bannister, Ph.D., dated December 7, 2018).  1-A is not produced by the human body; in order to be detected in Plaintiff's urine, he had to have ingested it.  Defs.' 56.1 Stmt. ¶ 9.

[3]   It is not entirely clear when Plaintiff began taking Anavite.  *See* Defs.' 56.1 Resp. Stmt. ¶ 36.  In his deposition, when asked about the last time he took Anavite before his drug test on October 14, 2016, he answered "I don't remember."  *Id*.; Dkt. 105-5 at 319:17-25.  Similarly, when asked how long he had been taking Anavite before October 14, 2016, Plaintiff responded, "I don't remember."  Dkt. 105-5 at 337:14-17.

multivitamin. *Id*. ¶¶ 26-27.  Moreover, at no point while his drug test results were pending did Plaintiff inform the USADA that his declaration was inaccurate or incomplete. *Id*. ¶ 28.

In 2017, well after Plaintiff's positive PED test, the USADA submitted to the Sports Medicine Research and Testing Laboratory ("SMRTL") two bottles of Anavite for testing. *Id.* ¶ 13.  One bottle was open and contained a single tablet; the other bottle was unopened and contained 180 tablets.  Dkt. 96-5 at 3, 6.  Both purported to be from the same lot. *Id.*  USADA asked SMRTL to analyze the tablets for anabolic agents.[4]  *Id*.; Defs.' 56.1 Stmt. ¶ 13.  On March 29, 2017, the SMRTL emailed the results of its analyses to the USADA.  Dkt. 96-5 at 2.  The SMRTL report contains two pages; the first states that 1-A was detected in Anavite from one bottle at "approximately 370 nanograms per tablet" and the second page states that 1-A was detected in Anavite from the second bottle at "approximately 850 nanograms per tablet."[5]  *Id*. at 3, 6.  There is no explanation for why tablets from the same lot would contain radically different quantities of 1-A.

Plaintiff asserts claims for: (i) breach of express warranty; (ii) breach of implied warranty of merchantability; (iii) breach of implied warranty of fitness for a particular purpose; (iv) violations of New York General Business Law §§ 349-50; (v) products liability under strict liability and negligence theories; and (vi) general negligence.  *See* SAC, Dkt. 60.

---

[4]    The Court notes, however, that neither bottle of Anavite tested by SMRTL was the bottle from which Plaintiff claims to have consumed Anavite in 2016; Plaintiff failed to preserve the bottle of Anavite from which he was supposedly taking tablets prior to his PED test in October 2016.  *See* Dkt. 122.

[5]    Defendants note that none of the other four laboratories that analyzed Anavite detected 1-A.  Defs.' Mem. of Law at 8 (citing Dkt. 96 at 7).  Moreover, Plaintiff's reference to the lab results from LGC Science, Inc., *see* Pl. 56.1 Stmt. ¶ 38, is irrelevant.  Although LGC Science detected androstenedione and DHEA in Anavite, LGC Science did not detect 1-A.  As this Court explained in its ruling on Defendants' motion to exclude Plaintiff's proposed expert testimony, 1-A, androstenedione, and DHEA are all distinct substances.  *See* Dkt. 125 at 9.  It is undisputed that "Plaintiff did not fail his PED test due to an overabundance of androstenedione.  Rather, he failed his PED test because USADA's lab detected 1-androstenedione" in his urine.  Defs.' 56.1 Stmt. ¶ 12.

**DISCUSSION**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris,* 550 U.S. 372, 380 (2007) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). To defeat summary judgment, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). A party may not "rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [his] version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). Courts "construe the facts in the light most favorable to the non-moving party and [] resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (per curiam) (internal citation and quotation marks omitted).

Because the purpose of summary judgment is to "weed out cases in which 'there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law,' it is appropriate for district courts to decide questions regarding the admissibility of evidence on summary judgment." *Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir. 1997) (internal citation omitted); *see also Presbyterian Church of Sudan v. Talisman Energy, Inc.,* 582 F.3d 244, 264 (2d Cir. 2009) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."); *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F.

Supp. 2d 53, 68 (S.D.N.Y. 2001) ("Pursuant to Rule 104(a), the court must evaluate evidence for admissibility before it considers that evidence in ruling on a summary judgment motion."). Because hearsay evidence that fails to satisfy a hearsay exception is inadmissible at trial, the Court will not consider it in ruling on a motion for summary judgment. Fed. R. Evid. 802; *H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454–55 (2d Cir.1991) (hearsay assertion that would not be admissible if testified to at trial is not competent material for a Rule 56(e) affidavit); *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) (affirming the district court's grant of summary judgment due to its determination that certain evidence was inadmissible hearsay).

Here, a key element of all of Plaintiff's claims is the supposed adulteration of Anavite. As such, the entirety of Plaintiff's case hinges on his ability to create a genuine issue of fact as to whether Anavite contains 1-A. Because the Court finds that Plaintiff lacks any admissible evidence indicating that Anavite contains 1-A, his claims necessarily fail.

### A. The SMRTL Lab Reports Are Inadmissible Hearsay

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Hearsay is "inadmissible unless made admissible by a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court." *Porter* 722 F.3d at 97; Fed. R. Evid. 802. Here, the SMRTL reports are indisputably hearsay; they are out-of-court written statements offered to prove that Anavite contains 1-A.

Although Plaintiff argues that the reports are admissible under the Business Records Exception ("BRE") to the hearsay rule, the Court disagrees. Under the BRE, "a record of an act, event, condition, opinion, or diagnosis" may be admissible even if the declarant is unavailable if:

> (A) the record was made at or near the time by—or from information transmitted by––someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business,

>     organization, occupation, or calling, whether or not for profit;
> 
> (C) making the record was a regular practice of that activity;
> 
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> 
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). The purpose of the BRE is to "ensure that documents were not created for 'personal purpose[s] . . . or in anticipation of any litigation' so that the creator of the document 'had no motive to falsify the record in question.'" *United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010) (quoting *United States v. Freidin*, 849 F.2d 716, 719 (2d Cir. 1988)); *see also Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.,* 38 F.3d 627, 632 (2d Cir. 1994) ("In all cases, the principal precondition to admission of documents as business records pursuant to Fed. R. Evid. 803(6) is that the records have sufficient indicia of trustworthiness to be considered reliable."). Thus, in order to introduce the lab reports as substantive evidence under the BRE, Plaintiff must demonstrate that: (i) the reports were made at or near the time the testing of Anavite took place, by someone with knowledge; (ii) the reports were kept in the ordinary course of business; and (iii) making the reports was a regular practice. *See* Fed. R. Evid. 803(6). To do so, Plaintiff would be required either to call a witness at trial to lay the appropriate foundation or to provide a certification that the above-referenced conditions were met. *See* Fed. R. Evid. 803(6)(D). Plaintiff is unable to do either.

      i.      **Plaintiff Cannot Call a Witness to Lay the Necessary Foundation**

Federal Rule of Civil Procedure 26(a)(1) requires a party to provide the opposing party with "the name of each individual likely to have discoverable information … that the disclosing party may use to support its claims or defenses." If a party fails to provide such information,

"the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c); *see also* Advisory Committee's Note to Rule 37 (explaining that this "automatic sanction provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, or on a motion, such as one under Rule 56.").

Here, Plaintiff produced his Rule 26 initial disclosures on December 28, 2017. Marck Decl. Ex. 5. The disclosures do not include anyone from the SMRTL who is qualified to lay the proper foundation to introduce the lab results under the BRE. *Id.*; *see* Pl. 56.1 Stmt. ¶ 19. Moreover, although fact discovery in this case did not close until November 2018, Plaintiff never amended or supplemented the disclosures pursuant to Rule 26(e). *See* Marck Decl. Ex. 6; Pl. 56.1 Stmt. ¶¶ 20-22. Plaintiff's trial witnesses are therefore limited to those disclosed in his initial disclosures; he would not be permitted to call anyone from the SMRTL to offer the lab reports into evidence under the BRE.[6] *See* Fed. R. Civ. P. 37(c); *Duchnowski v. Cty. of Nassau*, 416 F. Supp. 3d 179, 183 (E.D.N.Y. 2018) (holding that medical reports were inadmissible under the BRE because "none of Plaintiff's proposed witnesses can lay a foundation sufficient to satisfy the [Rule 803(6) requirements"); *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 216 (S.D.N.Y. 2007), *aff'd*, 354 F. App'x 496 (2d Cir. 2009) (concluding that the BRE did not apply because "no foundation has [or could be] laid that these notes were kept or recorded in the course of a regularly conducted business activity"). Because the lab reports would be inadmissible at trial, Plaintiff cannot rely on them to defeat Defendants' motion for summary

---

[6] Plaintiff makes much of the fact that Onye Ikuakor, USADA's general counsel and the recipient of the email from the SMRTL containing the lab results, was named in his initial disclosures. This fact is irrelevant; Mr. Ikuakor is not a "custodian or other qualified witness" and would be unable to lay the appropriate foundation for the lab reports under Rule 803(6). Although the disclosure of Mr. Ikuakor as a witness is irrelevant, the fact that Plaintiff disclosed the recipient of the SMRTL report as a potential witness but did not disclose a witness from SMRTL who could authenticate the lab report is baffling.

judgment. *Lara v. Delta Int'l Mach. Corp.*, 174 F. Supp. 3d 719, 739 (E.D.N.Y. 2016) ("The Court need only consider admissible evidence when adjudicating a motion for summary judgment."); *see Auz v. Century Carpet, Inc.*, No. 12-CV-417, 2014 WL 199511, at *1 n.1 (S.D.N.Y. Jan. 17, 2014) (noting that admission of hearsay evidence at summary judgment is only proper "if the contents would otherwise be admissible at trial.").

Plaintiff argues that his failure to comply with Rule 26(a) was "substantially justified" and "harmless." Pl. Mem. of Law at 5-6. The Court disagrees. In deciding whether to preclude evidence under Rule 37(c), courts consider "(1) the party's explanation for the failure to comply with the discovery [requirement]; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.,* 118 F.3d 955, 961 (2d Cir. 1997).

Plaintiff offers no explanation for his failure to comply initially with his discovery obligations under Rule 26, his failure to later supplement the disclosures, or his failure to request to reopen discovery.[7] These failures weigh in favor of exclusion under Rule 37. *Spotnana, Inc. v. Am. Talent Agency, Inc.,* No. 09-CV-3698, 2010 WL 3341837, at *2 (S.D.N.Y. Aug. 17, 2010) (excluding evidence under Rule 37(c) because the party "offered no explanation for its failure to disclose [evidence]" and discovery had closed). Moreover, the closure of discovery "weighs strongly against the possibility of a continuance." *Id.* The Court acknowledges that Defendants were aware of the lab reports throughout discovery and that exclusion is a harsh remedy.

---

[7] Plaintiff's handling of the SMRTL lab report is consistent with how he has litigated throughout this case; the Court previously granted Defendant's spoliation motion after Plaintiff failed to preserve the bottle of Anavite from which he allegedly consumed tablets in 2016. Dkt. 122. Additionally, the Court granted Defendant's motion to preclude Plaintiff's expert report, in part, because it failed to comply with Rule 26(a)(2)(B) in multiple ways. Dkt. 125 at 12-13.

Nonetheless, Plaintiff's failure to comply with basic discovery rules, particularly when they concern evidence central to his claims, is inexcusable and unjustified.[8] *See id.* (excluding the party's damages evidence even though it "may be denied any recovery as a result, because [it] disregarded its discovery obligations without any explanation at all."); *Rienzi & Sons, Inc. v. N. Puglisi & F. Industria Paste Alientari S.P.A.*, No. 08-CV-2540, 2011 WL 1239867, at *4-5 (E.D.N.Y. Mar. 30, 2011) (excluding evidence under Rule 37(c) even though the plaintiff "may be denied any recovery [] as a result" because plaintiff "disregarded its discovery obligations without a sufficient explanation").

### ii. Plaintiff Has Failed to Provide a Certification Under 803(6)(D)

In the absence of testimonial evidence from a custodian or qualified witness, a party seeking to introduce evidence under the BRE must provide a certification that complies with Rule 902(11) and adequately attests to the elements of Rule 803(6). *See* Rule 803(6)(D); *Djangmah v. Falcione*, No. 08-CV-4027, 2013 WL 6388364, at *5 (S.D.N.Y. Dec. 5, 2013) ("Rule 803(6) explicitly requires that this foundation be laid by a 'custodian' or 'qualified witness,' if testimonial, or by a formal certification by the record's custodian."). The certification must be executed by a person who "would be qualified to testify as a custodian or other foundation witness." 5 Weinstein's Federal Evidence § 803.08 (2020). Moreover, the witness must have "enough familiarity with the record-keeping system of the entity in question to explain how the record came into existence in the course of a regularly conducted activity of the entity." *Id.* Finally, a party seeking to use a certification to introduce evidence under the

---

[8] The Court finds Plaintiff's attempt to shift blame to Defendants to be unpersuasive. *See* Pl. Mem. of Law at 1 (arguing that Defendants engaged in "the ultimate 'gotcha' approach to litigation and motion practice."). It is not Defendants' responsibility to confirm that Plaintiff has taken appropriate measures to ensure the admissibility of evidence central to his own case. Moreover, Plaintiff's failure to disclose a witness from SMRTL made Defendant's tactical decision not to depose a witness from that lab eminently sensible.

BRE, must make the certification "available for inspection" by the opposing party so that they have a "fair opportunity to challenge [it]." *Duchnowski,* 416 F. Supp. 3d at 183 n.2 (citing Fed. R. Evid. 902(11)).

Here, Plaintiff has failed to obtain a sufficient certification under Rule 803(6)(D). Despite producing no certification at any point during discovery, Plaintiff now purports to rely on an affidavit recently signed by Daniel Eichner, president of SMRTL.[9] *See* Eichner Aff., Dkt. 127-8. Although Eichner's affidavit states that the test reports were "made at or near the time of analysis by the person with knowledge of the analysis" and "made and kept in the course of a regularly conducted analysis," *id.* ¶¶ 8-9, it fails to indicate whether Eichner was employed by SMRTL at the time of the relevant tests or whether he has any first-hand knowledge of the facts contained in the results or of the lab's record-keeping procedures in 2017. As such, the affidavit is insufficient to establish a foundation under Rule 803(6).[10] *See Abascal v. Fleckenstein,* 820 F.3d 561, 563-66 (2d Cir. 2016) (finding that a report lacked trustworthiness in part because it did "not describe the methodology that was used"); *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 828 F. Supp. 1114, 1120 (S.D.N.Y. 1993) (refusing to apply the BRE because "the reliability of the exhibit cannot be measured" where the person testifying "had insufficient knowledge of the methods of preparation, the selectivity and [the] methodology"); 2 McCormick On Evid. § 229.1 (8th ed.) ("Courts have been strict in requiring that the person making the written declaration

---

[9] Plaintiff's opposition brief is ambiguous; while the Court assumes that Plaintiff is attempting to use Mr. Eichner's newly-produced affidavit to satisfy the Rule 803(6)(D) certification requirement, Plaintiff also seems to suggest that he would call Mr. Eichner to testify at trial to lay the appropriate foundation under 803(6). *See* Pl. Mem. of Law at 9 ("Here, an SMRTL representative will testify that the Anavite testing results is a business record under FRE 803(6).") (citing Eichner Aff.). But Mr. Eichner was not disclosed as a witness in Plaintiff's Rule 26 disclosures. Marck Decl. Ex. 5. Thus, for the reasons explained *supra,* he would not be permitted to testify at trial.

[10] The affidavit from Nadia Soghomonian, the Legal Affairs and Investigation Counsel with USADA, also fails to satisfy the certification requirement of 803(6)(D). *See* Dkt. 127-9. Ms. Soghomonian merely attests that the emails transmitting the SMRTL test reports, and related correspondence, are true copies of the originals.

specifically state familiarity with the creation and maintenance of the proffered records."); 5 Weinstein's Federal Evidence § 803.08 ("[A]t a minimum, the authenticating witness must be familiar with the entity's recordkeeping practices."). Moreover, given that the affidavit is dated January 6, 2020, long after the close of discovery, Defendants had no opportunity to challenge the certification or to depose Mr. Eichner. 2 McCormick On Evid. § 229.1 ("Unsubstantiated conclusions often require the opponent to depose the author of the written declaration in order to establish whether there are possible grounds to challenge compliance with Federal Rules 902(11) and (12).").

Finally, because the lab reports relate to the ultimate issue in this case, the presence *vel non* of 1-A in Anavite, putting aside the hearsay problems, the Court would be extremely reluctant to admit the reports without substantive testimony from a SMRTL representative and an opportunity for cross-examination. *See* 2 McCormick On Evid. § 293 (noting that courts are "likely to be reluctant to permit a verdict to be reached on the basis of an un-cross-examined opinion," particularly when the opinion involves "a central dispute in the case, such as causation," because the probative value of the evidence is outweighed by the danger that the jury will be misled or confused).

In sum, because Plaintiff is unable to satisfy the elements of the BRE, either through live testimony or a written certification, the SMRTL reports are inadmissible hearsay.[11] As such, the Court will not consider them in resolving Defendant's motion for summary judgment. *See Auz,* 2014 WL 199511, at *1. Absent the SMRTL reports or any expert testimony, Plaintiff lacks any

---

[11] Defendants also argue that the lab results constitute an expert opinion and are therefore inadmissible without expert testimony. Defs.' Reply, Dkt. 130 at 3-4. Because the reports are inadmissible hearsay, the Court need not reach this argument.

evidence that Anavite contains 1-A.[12]  In the absence of such evidence, Plaintiff cannot prevail on any of his claims.[13]  Accordingly, Defendants' motion for summary judgment is granted.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to terminate the open motion at docket entry 126 and terminate this case.

**SO ORDERED.**

Date:  **June 22, 2020**
       **New York, New York**

**VALERIE CAPRONI**
**United States District Judge**

---

[12]  The Court previously granted Defendants' motion to exclude the testimony of Plaintiff's expert Shawn Wells.  Dkt. 125.

[13]  Plaintiff's claims for breach of express warranty, implied warranties, strict liability, and negligence all require, *inter alia*, Plaintiff to "show that the product at issue was defective and that the defectively designed product was the actual and proximate cause of the plaintiff's injury." *Lara,* 174 F. Supp. 3d at 740.  In the absence of any admissible evidence that Anavite contains 1-A, Plaintiff cannot demonstrate that Anavite is defectively designed.  The Court notes that Plaintiff is constrained to proceeding on a design defect theory, rather than a manufacturing defect theory; at oral argument on Defendant's spoliation motion, Plaintiff admitted he had "no evidence of intentional spiking."  Marck. Decl. Ex. 7; Pl. 56.1 Stmt. ¶ 23.

Similarly, in order to prove a claim under sections 349 and 350 of the New York General Business Law, Plaintiff must prove, *inter alia*, that the complained of "act or practice was misleading in a material way." *Dash v. Seagate Tech. U.S. Holdings, Inc.,* 27 F. Supp. 3d 357, 360 (E.D.N.Y. 2014).  Without any evidence that Anavite contains 1-A, Plaintiff cannot prove that Defendants engaged in any misleading or deceptive act or practice.